UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD FAUST, as the Personal Representative of the Estate of K.F., ASHLEY FAUST, individually, and JUSTIN FREDERICK, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS LLC, HUDIBURG BUICK-GMC, LLC, AUTOLIV AMERICAS, INC., and DELPHI AUTOMOTIVE, LLC,<br><br>    Defendant. | ) ) ) ) ) ) ) ) No. 5:16-cv-00961-F ) ) ) ) ) ) ) |

## DEFENDANT GENERAL MOTORS, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

The Court should enter General Motors, LLC's ("GM") proposed Protective Order, attached as Ex. 1. Plaintiffs' Response errs in three key ways. First, the parties have been negotiating an agreed protective order for the last five months. Never once has Plaintiffs' counsel disputed that a protective order was necessary or proper. On the contrary, Plaintiffs' counsel sought (and received) numerous revisions to the proposed protective order. And yet now, Plaintiffs' counsel has done a complete about-face. Where before Plaintiffs only disputed the terms of the protective order, they now dispute it in its entirety.

It is well-settled that trade secrets and technical data should be protected in discovery. As detailed in the attached Affidavit and below, the documents at issue are trade secrets, and GM would suffer true harm if this information was publically

disseminated. Under these circumstances, the Western District Court and the Tenth Circuit have both held that protective orders are appropriate. GM respectfully requests that this Court do the same.

The second error, to which Plaintiffs devote the bulk of their Response, relates to "sharing" of discovery. Plaintiffs' brief implies that GM's proposed protective order is a *non-sharing* order. [Dkt. 28, p. 5-9]. On the contrary, GM's proposed protective order is already a *sharing* order. GM has already agreed to a liberal sharing provision, except as to 3D CAD data – its most closely-guarded and potentially-damaging trade secrets.

Finally, Plaintiffs urge that a document return provision violates an unspecified ethical duty and allows GM to commit unspecified future discovery misconduct. Plaintiffs are unable to find any authority to support this position, because none exists.

GM's proposed Protective Order does not bar Plaintiffs from using trade secrets to prosecute their case. It merely governs dissemination of these trade secrets. This facilitates the liberal discovery Plaintiffs demand, while protecting GM's legitimate business interests. Therefore the Court should enter GM's proposed Protective Order.

I.   **The Court should enter a protective order to shield GM's trade secrets from public dissemination.**

   A.   **Plaintiff has never once disputed that a protective order was necessary or appropriate in this case.**

Plaintiff's Response urges that "GM's brief is devoid of particular and specific showing of need for the protection it seeks." [Dkt. 48, p. 2]. That is because until filing their Response brief, Plaintiffs agreed that a protective order was necessary. Plaintiffs sought extensive revisions to the protective order during the *five-month* negotiation

period.  [Email from Jason Robinson, attached as Ex. 2].  Plaintiffs could have contested the need for a protective order at any time during this five-month period.  Instead, Plaintiffs' counsel extracted concessions while feigning agreement.  GM, in good faith, agreed to many of Plaintiffs' revisions to Paragraphs 3, 4, 6, 7, 10, 11, 13, 14, 15, 16, 20, and 21 of the proposed Protective Order.  [Confirmation email, attached as Ex. 3].

Now, for the first time in this litigation, Plaintiffs have reversed positions and urge that the Court should not enter a protective order at all because GM did not address this previously-uncontested point.  However, GM should not be faulted for not briefing an uncontested point, and GM should not be punished for relying on Plaintiffs' representations or attempting to conduct discovery in good faith.  Since the need for a protective order is now contested, GM sets forth the basis for a protective order below.

**B.      Protective order is necessary to protect GM's trade secrets.**

**1.      A protective order is authorized under Fed. R. Civ. P. 26.**

Fed. R. Civ. P. 26 (c)(1)(B) provides that the Court may enter a protective order that specifies the terms for the disclosure of discovery, including that "a trade secret or other confidential research, development, or commercial information not to be revealed or be revealed only in a specified way."  This provision is routinely used to protect technical information in product liability cases such as this one.  Indeed, until Monday of this week, Plaintiffs' counsel has routinely agreed that protective orders are appropriate before this and other courts.  *See, e.g., Tipton v. General Motors LLC,* CIV-16-225-C (W.D. Okla. 2016) (Protective Order attached as Ex. 4).

When a party seeks a protective order limiting disclosure of trade secrets, it must establish that the information sought is a trade secret, and demonstrate that disclosure of the trade secret "*might*" be harmful.  *In re Cooper Tire & Rubber Co.,* 568 F.3d 1180, 1190 (10th Cir. 2009) (emphasis added).  GM clearly satisfies this threshold.

> 2.     **The documents at issue constitute trade secrets, and their disclosure would result in harm to GM, satisfying the threshold for protection set forth by the Tenth Circuit.**

Since Plaintiffs now dispute the previously-uncontested need for a protective order, GM submits with this Reply the affidavit of Hamed Sadrnia in support of its request.  [Affidavit, attached as Ex. 5].  Mr. Sadrnia has served as a mechanical engineer at GM since 1985.  [*Id.* at ¶ 3].  In his capacity within the Engineering Analysis group, he has developed familiarity with the information GM maintains concerning the design and development of airbag and belt systems, as well as GM's policies and procedures for managing technical documents and responding to discovery requests.  [*Id.* at ¶ 3-7].

As Mr. Sadrnia's testimony explains, GM's business and engineering information is one of its most important assets.  [*Id.* at ¶¶ 8 -10, 13, 14, 30-33].  GM has invested tremendous resources to collect this information, and uses it to compete on the global automotive market.  [*Id.*].  This information is not available to the public, and GM derives significant value from its confidentiality.  [*Id.* at ¶ 14].

GM takes extensive steps to protect its trade secrets from disclosure, even internally.  [*Id.* at ¶¶ 10 – 12, 28-31, 36-40].  Employees do not have ready access to engineering information, which is only accessible to a limited number of authorized staff, including technical, engineering, and legal staff.  This includes information relating to

design, testing, evaluation, and manufacture. [*Id.* at ¶¶ 9-11]. Employees without pre-approved privileges, and any visitor to a GM facility, must register before even entering a building where such documents are stored. All must wear visible identification badges all time while inside, and visitors are guarded by escorts. [*Id.,* at ¶ 11]. All electronics are carefully screened upon entry, and any video equipment (including cell phones) go through security procedures to disable their cameras. [*Id.*].

The Tenth Circuit has said that protective orders should shield trade secrets if disclosure *might* harm a company. *Cooper Tire,* 569 F.3d at 1190. GM would *certainly* suffer significant harms if Plaintiffs were allowed to freely disseminate technical data. For example, GM customer care, aftersales, and parts divisions sell replacement parts and add-on accessories. [*Id.* at ¶ 12]. If a competitor in the aftermarket business obtained this information, it could copy GM parts and offer them for sale in competition with GM, effectively stealing GM technology. [*Id.*]. This access would give any such competitor a significant, unfair competitive advantage.

Similarly, GM's competitors would gain economic value from disclosure of this information. With this information a competitor could match GM's technology without compensating GM for its development expense, and without making expenditures of its own. [*Id.,* ¶¶ 14-40]. A competitor could easily exploit GM's technology by comparing its designs with those of GM, identifying and correcting its own deficiencies to develop an unfair competitive advantage. Similarly, this engineering information could easily be used by bad actors to create and sell counterfeit automotive components or to create

competing vehicle lines that appear nearly identical to GM's vehicles, but with a competitor's name on it. [*Id.*].

Mr. Sadrnia also explains in detail both security measures and potential prejudices to GM specific to specifications, test documents and reports, design and assembly information, Performance Assessment Committee reports, safety performance reports, the Occupant Performance Evaluation Consideration Book, meeting minutes and memoranda, and 3D Electronic Computer Aided Design ("CAD") data. [*Id.*, ¶¶ 14-40]. Rather than transcribe all of Mr. Sadrnia's testimony here, GM respectfully submits that the Court should consider the affidavit in its entirety.

Plaintiffs do not, and cannot, deny that the information they seek constitutes trade secret information. Plaintiffs demand "test results," "all documents relating to any experiments, studies, or tests conduct by GM or by an independent individual or entity at the request of GM," "design drawings" for numerous components, "failure mode and effects and analyses," prototype certifications, production certifications, "internal meetings memoranda of engineers," and numerous other types of information for the 2012 Malibu as well as all "pre-prototype, prototype, pre-production and production models." [Plaintiffs' Requests for Production, pp. 2-8, attached as Ex. 6]. Plaintiffs cannot credibly dispute that these are trade secrets.

In light of this showing, GM has demonstrated both that the documents are confidential trade secrets and that harm might befall GM if they were improperly disseminated. The Court should therefore enter the protective order GM has proposed.

**II.    Contrary to Plaintiff's representations, GM's proposed protective order has extensive sharing provisions that comport with the appropriate ends of discovery.**

Plaintiffs spend most of their Response urging the Court to enter a "sharing" protective order [Dkt. 48, pp. 4-8], to avoid "burdening future litigants. . ." [*Id.*, p. 9]. Plaintiffs have provided a number of cases from 1915 through 1991 that state, generally, that sharing protective orders can be used in litigation. [*Id.*].

The proposed Protective Order, however, *is already a sharing order.*  Paragraph 6 of the proposed Protective Order authorizes Plaintiffs to share most documents produced with counsel, staff, experts, consultants, the Court, and even, under some circumstances, other plaintiff attorneys, while preventing the dissemination of discovery materials to attorneys having no connection to the case, or other third-parties with no legitimate claim to discovery in this suit. [Ex. 1, ¶ 6].

Plaintiffs insist that only unfettered publication of GM's trade secrets will serve the purpose of discovery.  However, "[t]he discovery process is primarily designed to facilitate an orderly and efficient resolution of individual lawsuits, not to provide a national database." *Ford Motor Co. v. Manners*, 239 S.W.3d 583, 389 (Mo. 2007).  As explained above, Plaintiffs' indiscriminate publication of GM's trade secrets would cause severe harm to GM.  Whatever benefit to future litigants might be served by document sharing is served by the existing sharing provision GM has already proposed.

Plaintiffs specifically complain about Paragraphs 6(e), 14, 15, and 20 of the proposed Protective Order, because they contemplate some documents too valuable and too confidential to be subject to sharing.  [Dkt. 48, p. 2].  These materials are CAD

(computer aided design) data, a three-dimensional, mathematical representation of vehicle components and sub-assemblies. [Ex. 5, ¶ 30-33]. These are GM's most closely guarded trade secrets, embodying the company's accumulated knowledge as well as millions of dollars and thousands of engineering hours in development. [*Id.*].

If disclosed outside of this litigation, these assets would allow any competitor or bad actor to quickly and easily fabricate knock-offs of GM components, allowing rapid exploitation of GM's technology and destroying the competitive advantage GM has accumulated over decades. [*Id.* at ¶¶ 34-40]. These assets would reveal information that a competitor could not learn through any form of reverse engineering. [*Id.* at ¶ 34]. This information would give any of GM's competitors a substantial economic advantage and cost-savings, while effectively destroying the value of the millions of dollars and thousands of engineering hours GM has invested. [*Id.* at ¶¶ 34-40].

Only a handful of authorized employees within GM even have access to this CAD data, and only on a need-to-know basis for their employment. [*Id.* at ¶¶ 37-39]. GM's longstanding internal policies safeguard this information, and any violation of these policies is grounds for immediate termination and legal action. [*Id.* at ¶ 39]. In the rare instances when this information is distributed to outside vendors (like part suppliers), all transmissions are protected by contractual confidentiality and secured, encrypted transmission portals. [*Id.*].

GM does ask that the Court impose heightened protection on this species of information, because it is GM's most valuable intangible asset. Plaintiffs offer no explanation whatsoever why GM should surrender Rule 26 protections from this precious

asset.  Furthermore, Plaintiffs fail to mention that the proposed Protective Order includes avenues for judicial review if they think GM has improperly designated material confidential.  [Ex. 1, ¶ 3, 6(d), 10].

Plaintiffs also complain that Paragraph 21 which limits Plaintiffs' ability to publicize and share the private information of GM customers.  [Dkt. 48, p. 2].  The provision protects customer names, social security numbers, health records, driver's license or other identification numbers, personal financial information, insurance claim and policy numbers, and personal contact information.  [Ex. 1, ¶ 21].

It would be a grotesque violation of privacy for GM's customers to have their social security numbers, medical records, or tax returns publicized.  In addition to basic decency, this information should also be protected because disclosure may implicate federal, state, and foreign privacy laws like HIPAA or FERPA.  And Plaintiffs do not even attempt to explain why they would want or need to publicize this information.  GM respectfully submits that Paragraph 21 is an important and appropriate protection for its customers, and asks that the Court enter the proposed Protective Order.

## III.   A document return provision does not violate any ethical rule, nor does it authorize GM to commit discovery misconduct.

In the introduction to their Response, Plaintiffs complain that the proposed Protective Order includes a document return provision.  Plaintiffs submit that this "will cause Plaintiffs' counsel to violate their ethical duty to make available to Plaintiffs the entirety of their case files," and that it will enable GM to "withhold materials from future litigants by eliminating any and all means of comparison to its production in past cases."

[Dkt. 48, p. 3].   This argument is disingenuous, especially in light of the fact that Plaintiffs' counsel agreed to a supposedly-unethical Document Return/Destruction provision in the *Tipton* case.  [Ex. 4, ¶ 15].

Although Plaintiffs could not find any authority for their argument, GM's research showed that courts *approve* of these return provisions.   *See, e.g., Ford Motor Co. v. Manners*, 239 S.W.3d 583, 389 (Mo. 2007) (issuing writ to prevent post-litigation sharing of auto manufacturer's confidential and trade-secret data).  Document Return/Destruction agreements are very common in modern discovery practice.  Indeed, the Form Protective Order used by the Northern District Court of Oklahoma specifically includes such a provision.  [NDOK Form Protective Order, attached as Ex. 7, ¶ 9].  Plaintiffs cannot credibly argue that the federal judges of the Northern District are compelling attorneys to commit ethical violations by including a Document Return/Destruction provision.

As to Plaintiffs' other allegation, the document return provision certainly does not authorize or condone any sort of discovery misconduct.  GM has no desire or intent to commit discovery misconduct in any forum for any reason, and Plaintiff has failed to make any showing that this is a real concern in this case.  Concerns about future lawsuits are best addressed in those future lawsuits, if any when they come into existence.  The purpose of discovery is to develop evidence relevant to *this* trial, not some hypothetical future lawsuit.  Fed.R.Civ.P. 26(b)(1).

For all of these reasons, GM respectfully requests the Court enter the Protective Order, Ex. 1, that GM negotiated with Plaintiffs and which best serves the interests of discovery.

MCAFEE & TAFT


By  s/ Andrew L. Richardson
MARY QUINN COOPER, OBA #11966
ANDREW L. RICHARDSON, OBA #16298
MICHAEL F. SMITH, OBA #14815
Williams Center Tower II
Two West Second Street, Ste. 1100
Tulsa, Oklahoma  74103
(918) 587-0000
(918) 599-9317 (facsimile)
maryquinn.cooper@mcafeetaft.com
andrew.richardson@mcafeetaft.com
michael.smith@mcafeetaft.com
Attorneys for Defendant
General Motors LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of July, 2017, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Richard L. Denney
Lydia JoAnn Barrett
Russell T. Bowlan
Jason E. Robinson
rdenney@dennbarr.com
lbarrett@dennbarr.com
rbowlan@dennbarr.com
jrobinson@dennbarr.com

Larry Tawwater
lat@tawlaw.com
Attorneys for Plaintiffs

James A. Jennings
Linda G. Kaufman
Halie D. Treas
J. Derrick Teague
Jennings Teague
204 N Robinson, Ste 100
Oklahoma City, OK  73102
Attorneys for  Autoliv ASP, Inc.

/s Andrew L. Richardson