**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RICHARD FAUST, as the Personal Representative of the Estate of K.F., ASHLEY FAUST, individually, and JUSTIN FREDERICK, individually, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 5:16-cv-00961-F ) |
| GENERAL MOTORS LLC, HUDIBURG BUICK-GMC, LLC, AUTOLIV ASP, INC., and DELPHI AUTOMOTIVE, LLC, | ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT**
**AUTOLIV ASP, INC.**

Plaintiffs ask that the Court overrule the motion of Defendant Autoliv ASP, Inc. (hereinafter "Autoliv") because the undisputed facts do not lead to one reasonable conclusion as a matter of law; therefore, the issue of whether the seatbelt designed and manufactured by Autoliv was defective must go to the jury.

**Introduction**

On March 17, 2014, Plaintiff Ashley Faust was driving a 2012 Chevrolet Malibu with her 11-year-old daughter, K.F., riding in the front passenger seat and properly wearing her seatbelt, when the vehicle left the roadway and collided with a tree.  Though driver Ashley's airbag deployed, permitting her to survive the crash, K.F.'s airbag did not deploy. K.F.'s airbag was suppressed by a defective occupant classification sensor.  Additionally,

her defective seat belt retractor allowed 10 plus inches of webbing to payout resulting in her death dealing injury when K.F.'s head hit the dash (Exhibit 2, pp. 6-8).  Plaintiffs' claims in this action are based upon second impact theory of strict liability for lack of crashworthiness – i.e., the defective seatbelt and airbag sensor failed to protect K.F. in a foreseeable highway driving event.

## STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court must view all facts and inferences in a light most favorable to the non-movant (*Bowman v. Presley* – 2009 OK 48 – 212 P.3d 1210, 1216-17, 1219; *U.S. v. Diebold* – 369 U.S. 654, 655 – 1962).  In *Celotex Corp. v. Catrett* (477 U.S. 317, 331 fn. 2 – 1986), the Court held (quotation merged, citations omitted):

> The burden of persuasion imposed on a moving party by Rule 56 is a stringent one. Summary judgment should not be granted unless it is clear that a trial is unnecessary, and any doubt as to the existence of a genuine issue for trial should be resolved against the moving party. *** If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment.

## RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Admitted.

2.     Plaintiffs admit that Autoliv manufactured the subject seatbelt assembly and airbag module components.  Plaintiffs would add that Autoliv also designed all of the components which made up the seatbelt assembly (Redacted Excerpts of Deposition of

David Prentkowski, Exhibit 5, at 19/3-25).

      3.     Admitted.

      4.     Admitted.

      5.     Admitted.

      6.     Admitted.

      7.     Admitted.

      8.     Disputed.  As he related clearly in his deposition (Redacted Excerpts of Deposition of Neil Hannemann, Exhibit 1, at 148/5 to 149/17), Mr. Hannemann documents the load limiter defect no less than 3 times in his Rule 26 Report (Doc. 88-1).  In his Restraint System Analysis section (Id., pp. 15-16, ¶8), he documents industry knowledge of the risk associated with force levels lower than 6 kilonewtons ("kN").  In the section devoted to his review of documents generated by Defendant General Motors LLC (hereinafter "GM"), he reemphasizes the fact that industry knowledge dating back to the 1990s disfavors GM's decision to reduce its force level from 5kN to 2kN without incorporating failsafe mechanisms to compensate for that reduction (Id. at 18-19).  Finally, in his Conclusions section (Id. at 27, ¶D), he summarizes the load limiter defect:

> Safer alternative design practices existed at the time of the design of the 2012 Chevrolet Malibu and were both economically and technologically feasible. These safer alternatives include different methods of classifying occupants, use of load limiter features that would operate as a fail-safe in the event of airbag non-deployment, use of a load limiter with a stop, or a higher force load limiter.

At his deposition, Mr. Hannemann was quite expansive with his scientific

3

explanation of how the load limiter defect caused K.F.'s injuries in this accident (Exhibit 1 at 131/3-18, 149/24 to 150/3, 152/4 to 154/6, 157/22 to 158/16, 159/21-3, 165/2-19, 186/18-22, 296/8-19).   And when we consider in full context his answer to defense counsel's question about why he did not state in his report "the load limiter is defective," we are left with the commonsense impression that he merely thought it redundant to restate the obvious:

```
160
20    Q   Why, in your report, do you not just
21   come right out and say anywhere that the load
22   limiter was defective?
23    A   Yeah.  I would say that that report
24   could have been written better.  It's -- I just
25   left that -- left that particular line off.
161
1    Q   Why?
2    A   Probably because the -- if she had had
3   an airbag, I think it's likely she would have
4   survived the defective load limiter.
```

9.    Admitted.

10.   Admitted.

11.   Admitted.

12.   Admitted.

## PLAINTIFFS' STATEMENT OF ADDITIONAL
## UNDISPUTED MATERIAL FACTS

13.    In its regulation devoted to devices intended to protect passengers in crashes, including airbags (Title 49 CFR §571.208; referred to hereinafter as "FMVSS 208"), the

4

National Highway Traffic Safety Administration ("NHTSA") requires that an airbag "shall" fire in a crash if the SDM[1] detects a normally seated 5th percentile female, defined as weighing at least 102.79 pounds and standing at least 55 inches tall (Redacted Excerpts of Deposition of Hamed Sadrnia, Exhibit 2, at 47/11-20, 60/8 to 61/6, 64/7-8, 287/4-10).

14.     K.F.'s height and weight placed her decidedly within the FMVSS 208 definition of a 5th percentile female (Exhibit 2 at 92/4-11, 99/13 to 100/4; Redacted Rule 26 Report of Kathryn F. Anderson, Exhibit 4, p. 19).

15.     GM's Internal requirements further mandate that the SDM not turn off, or suppress, the airbag: (a) in response to "the whole spectrum" of positions in which an occupant might sit, including forward movement, backward movement and rotation (Exhibit 2 at 29/10 to 30/6); (b) when an occupant leans against the door or armrest/console, rotates inward and outward, slouches and fidgets (Id. at 30/17 to 33/4, 61/18 to 62/23); or (c) when an occupant reaches into the backseat area (Id. at 112/2-7).

16.     GM's expert on passenger restraints admits that (a) the term "foreseeable" applies to any passenger behavior which is reasonably imaginable (Id. at 111/16-23) and (b) not even he – an expert witness with over one generation of professional engineering experience – bothers to read an owner's manual before either driving or riding in the passenger seat of a vehicle he does not own (Id. at 108/17 to 109/6).

17.     Autoliv's expert – William W. Van Arsdell, Ph.D., P.E. – noted in review of

---

1 The "Sensing and Diagnostic Module" turns the airbag on or off depending on the size of the person seated.

his surrogate study: "When wearing the seat belt properly, the seat belt offered good fit for an occupant the size of K.F."  (Redacted Excerpts of Van Arsdell Report, Exhibit 3, p. 8).

18.    Though she was properly belted, K.F.'s air bag failed to deploy, and the seatbelt permitted her to excurse forward into the knee bolster, instrument panel and glove box of the vehicle, resulting in her fatal injuries (Exhibit 4, pp. 7, 11-12, 19-20).

19.    Autoliv maintains regular communication with GM throughout the process of developing and testing restraint systems it supplies, and GM provides Autoliv with test results (Exhibit 5, at 47/4 to 52/4).

20.    Autoliv was aware of GM's reduction of load limiter force from 4kN to 2kN (Id. at 58/1-25, 62/11-14, 74/4 to 75/11).

21.    All the while Autoliv provided, and continued to provide, the subject seatbelt with a load limiter force of 2kN, it (a) was generally aware that "air bag nondeployment is not uncommon" (Id. at 82/19 to 83/12, 119/23-5); (b) was familiar with the federal New Car Assessment Program ("NCAP") tests **performed on the subject vehicle** in which, as a result of air bag nondeployment, properly belted test dummies crashed into the dashboard (Id. at 120/13 to 128/4) – as well as GM test failures with 5th percentile female dummies (Deposition Excerpts of Elizabeth Kiihr, Exhibit 6; Exhibit 1 at 191/5 to 192/9); (c) was cognizant of the simple physics of forward motion which dictate that an unrestrained passenger will collide with whatever solid object is in front of him in a collision (Exhibit 5 at 151/1 to 152/17) and (d) was not only aware of certain alternative designs to

compensate for the inadequacy of a load limiting force of 2kN, but had itself developed a retractor which incorporated one of those alternative designs (Id. at 166/7 to 167/21, 173/16 to 174/15).

22.     Despite the aforementioned knowledge, Autoliv never warned GM of the scientific and statistical inevitability that a retractor with a load limiter force of only 2kN would cause injury to a passenger (Id. at 172/1-13), even though it had an ethical duty to do so (Exhibit 1 at 201/8-19).

## ARGUMENT AND AUTHORITY

The cases Autoliv cites (Brief at 7) notwithstanding, expert opinion is not a *sine qua non* in every products liability case.  The holding articulated nearly half a century ago in *Kirkland v. Gen. Motors Corp.* (1974 OK 52; 521 P.2d 1353, 1363-4) still stands:

> The practicing lawyer identified with the Plaintiff will seldom be able to produce actual or absolute proof of the defect so necessary in manufacturers' products liability since this information in the final analysis is usually within the peculiar possession of the Defendant. Carefully prepared interrogatories or depositions may be helpful to a Plaintiff, but more than likely Plaintiff may be forced to rely on circumstances and Proper inferences drawn therefrom in making his proof. We note that in some accidents the surrounding circumstances and human experience should make Plaintiff's burden less arduous; he may be able to sustain his burden, but more than likely if the Defendant is a manufacturer or assembler of some highly complex product such as an automobile, human experience will play little or no part in reducing his burden, and he will be relying upon the inference drawn from circumstantial evidence.

> *Chickasha Cotton Oil Company v. Hancock*, Okl., 306 P.2d 330 (1957), is a case in point, for it deals with circumstantial evidence; not only does it allow recovery against a manufacturer or processor, but in essence it is a products case although the issue of warranty seems not to have been

raised, probably because it deals with animal food and as we have seen before, these cases were an early exception to the requirements of warranty and negligence. In *Chickasha* the basis of Plaintiff's award was the 'defect', grease poisoning, found in a prepared feed, and we held:

> 'In civil cases, facts may be proved by direct or circumstantial evidence, or a combination of both, and it is not necessary that such proof rise to such degree of certainty as to support only one reasonable conclusion and exclude all others.'

> In *Jack Cooper Transport Company v. Griffin*, Okl., 356 P.2d 748 (1959), a fire case; *McCasland v. Burton*, Okl., 292 P.2d 396 (1956), a salt water poisoning of cattle case; *Otis Elevator Company v. Melott*, Okl., 281 P.2d 408 (1954); *Greenland v. Gilliam*, 206 Okl. 305, 241 P.2d 384 (1952); *Berg v. Bryant*, Okl., 305 P.2d 517 (1956); and most recently in *Sisler v. Jackson*, Okl., 460 P.2d 903 (1969), we have allowed proof of negligence by circumstantial evidence. Most of these cases are personal injury cases, but some, as noted, are almost product liability. Dean Keeton in speaking of such evidence says it is 'but another way of saying that the circumstances must point an accusing finger at the Defendant . . ..' See also 20 Am.Jur.2d Evidence ss 4 and 1091 and their annotations.

Though Plaintiffs are confident Autoliv's *Daubert* motion will fail on both facts and applicable law, in the unlikely event Mr. Hannemann's testimony were not available to it, the jury would nonetheless have sufficient circumstantial evidence on which to conclude that the seatbelt was defective in this accident.  It is undisputed pursuant to the physical evidence that K.F.'s air bag did not deploy and, though she was properly belted, she struck the knee bolster and dash area of the vehicle in the crash, resulting in fatal injuries (SOF 17, 18).  From this simple set of facts, a reasonable juror, having from his or her tender years understood the purpose and basic function of the modern seatbelt, may infer that the seatbelt performed in an unreasonably dangerous manner.

Mr. Hannemann's role as an expert witness is to provide that reasonable juror with a scientific explanation to translate that inference into a determination. Thus, in light of both the admitted and disputed facts as outlined above, the question central to a resolution of Autoliv's motion is: Do the relevant facts indicate a defect in the seatbelt itself which led to K.F.'s fatal injury (Brief at 9-10)? For good measure, Plaintiffs will answer within the broader liability framework provided by *Kirkland*:

- Autoliv designed and manufactured the subject seatbelt assembly (SOF 2);

- At GM's request, Autoliv manufactured the retractor with a load limiting force of 2kN, despite its knowledge that (a) airbag nondeployment was, not a mere possibility, but a demonstrated statistical certainty and (b) a load limiting force of 2kN would, in that event, fail to restrain an occupant falling within the 5th percentile female category, inevitably permitting said occupant to crash into the knee bolster, glove box and instrument panel of the vehicle (SOF 8, 19-21);

- Autoliv neglected to warn GM of the inevitable catastrophic results that would ensue with a load limiter force of only 2kN in the event the airbag failed to deploy (SOF 22);

- K.F. met the requisites of a 5th percentile female and, thus, was of the size and weight of an intended front seat passenger in the subject vehicle (SOF 13-16);

- K.F. was properly wearing her seatbelt at the time of the accident (SOF 17, 18);

- When K.F.'s airbag failed to deploy, the dangerously weak load limiter in the retractor of her seatbelt failed to restrain her, allowing her to impact the various hard surfaces in front of her and incur fatal injuries (SOF 11, 18).

In sum, but for Autoliv's knowing compliance with GM's request that Autoliv design and manufacture the subject retractor with a load limiting force of 2kN, K.F.'s seatbelt would have kept her "within the confines of her seat," and she would have survived this accident (SOF 11).  Plaintiffs therefore ask that Autoliv's motion be denied.

Respectfully Submitted

S/Jason E. Robinson
Richard L. Denney, OBA No. 2297
Lydia JoAnn Barrett, OBA No. 11670
Russell L. Bowlan, OBA No. 15731
Jason Eric Robinson, OBA No. 22289
DENNEY & BARRETT, P.C.
870 Copperfield Drive
Norman, OK  73072
Tel: 405-364-8600
Fax:  405-364-3980

Larry Tawwater, Esq.
The Tawwater Law Firm, PLLC
14001 Quail Springs Pkwy
Oklahoma City, OK 73134
Tel: 405-607-1400
Fax: 405-607-1450

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of September, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel of record.

Mary Quinn Cooper, Esq.
Andrew L. Richardson, Esq.
Michael F. Smith, Esq.
Williams Center Tower II,
2 W. 2nd Street, Suite 1100
Tulsa, OK 74103
**Attorneys for General Motors LLC and Hudiburg Buick-GMC**

James A. Jennings, Esq.
Linda G. Kaufman, Esq.
Haylie D. Treas, Esq.
J. Derrick Teague, Esq.
Jennings Teague, P.C.
204 N. Robinson, Suite 1000
Oklahoma City, OK 73102
**Attorneys for Autoliv ASP, Inc.**

S/Jason E. Robinson
Jason E. Robinson