IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

RICHARD FAUST, as the Personal        )
Representative of the Estate of K.F.,  )
ASHLEY FAUST, individually,            )
and JUSTIN FREDERICK, individually,    )
                                       )
     Plaintiffs,                       )
                                       )
vs.                                    )   Case No. 5:16-cv-00961-F
                                       )
GENERAL MOTORS LLC,                    )
HUDIBURG BUICK-GMC, LLC,               )
AUTOLIV ASP, INC., and                 )
DELPHI AUTOMOTIVE, LLC,                )
                                       )
     Defendants.                       )

## REPLY TO PLAINTIFFS' RESPONSE TO AUTOLIV ASP, INC.S MOTION FOR SUMMARY JUDGMENT

Defendant Autoliv ASP, Inc. respectfully submits this reply to Plaintiffs' Response in Opposition [Doc. 94] to Motion for Summary Judgment of Autoliv ASP, Inc. [Doc. 87].

Autoliv moved for summary judgment on the manufacturers' strict products liability claim asserted against it by Plaintiffs based on alleged defects in component parts – the right front airbag module and the right front seat belt assembly – manufactured by Autoliv and integrated by General Motors into the restraint system of the 2012 Chevrolet Malibu. Plaintiffs do not dispute and therefore concede that they have no evidence, expert or otherwise, to support a claim that the right front airbag module was defective. *See* Plaintiffs' Response, Response to Autoliv's Fact No. 5 at p.3 and Argument at pp.8-10. Consequently, Autoliv is entitled to summary judgment on Plaintiffs' claim related to that

component. The same is true of Plaintiffs' claim based on an alleged design defect in the load limiter in the right front seat belt assembly. Plaintiffs' expert did not say in his report that the load limiter was defective. And Plaintiffs have not come forward with evidence, either with or without the testimony of their expert Neil Hannemann which Autoliv has moved to exclude under *Daubert*, to prove that it was and that a defect in the load limiter in the right front seat belt assembly – as opposed to a defect in the restraint system into which it was incorporated – caused K.F.s injuries.

## I. REPLY TO PLAINTIFFS' RESPONSE TO AUTOLIV'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiffs admit Undisputed Facts Nos. 1-7 and 9-12 in Autoliv's statement of material facts as to which there is no genuine dispute.

2. Plaintiffs dispute Undisputed Fact No. 8 in Autoliv's motion. But Hannemann acknowledged at his deposition that he does not say in his report that the right front seat belt assembly of the 2012 Malibu is defective due to the load limiter. Plaintiffs offer the "commonsense" explanation for his failure to do so – that "he merely thought it redundant to restate the obvious." And in the deposition testimony cited by Plaintiffs, Hannemann merely identifies where he "discussed" the load limiter and GM's decision to reduce the force level from 5kN to 2kN:

> Q   Where, specifically, do you describe, though, the defect in the load limiter of the subject vehicle, and specifically, of the front passenger seat belt?
> A   Well, it's probably a combination of the chart, the information from General Motors, that shows they went to a 2 kilonewton load limiter

2

> and in the general discussion where it's my opinion that that's too low of a load limit for any application.
> Q   For what application?
> A   For any application. I mean safety belts are application specific, but I don't think there is any application where you would take the force that low.
> Q   So you are saying – and correct me if I am wrong – the defect is that the load limiter had 2 kilonewtons? Is that the defect?
> A   Right. It's the setting. Nothing broke on it.
> Q   Correct.
> A   Nothing is wrong. It's just the setting, which is a customer-defined feature.

Hannemann Deposition, 148/23-149/20 [Doc. 94-1]. Plaintiffs admit Autoliv's Undisputed Fact No. 12 that the right front seat belt assembly and its load limiter in the 2012 Malibu functioned in the subject crash as it was designed and specified to function by General Motors. Hannemann's criticism is not of the load limiter itself but of the way it was utilized in the restraint system of the 2012 Malibu. Hannemann claims, in his affidavit submitted in response to Autoliv's *Daubert* motion, that he identified a defect in the right front seat belt assembly in his report. He stated the "restraint system" of the 2012 Malibu was defective and the seat belt assembly is part of the "restraint system." Affidavit of Hannemann, p.8, ¶ 24 [Doc. 95-2]. That statement is nothing but meaningless double talk and is wholly insufficient to support Plaintiffs' claim against Autoliv. Autoliv did not manufacture the "restraint system" in the 2012 Malibu. It manufactured, according to General Motors' specifications, a component part integrated into the vehicle's restraint system by General Motors. *See* Response to Plaintiffs' Statement of Additional Undisputed Material Facts, Nos. 19, 22, *infra*.

3

## II. RESPONSE TO PLAINTIFFS' STATEMENT
## OF ADDITIONAL UNDISPUTED MATERIAL FACTS

13.     Disputed. This fact relates to the airbag and the "sensing and diagnostic module" or SDM which turns the airbag on and off. Autoliv did not provide these components. As GM noted in its response to this fact in Plaintiffs' motion for partial summary judgment, which Autoliv adopted – *see* Autoliv's Response to Plaintiffs' Motion for Partial Summary Judgment, p.1 [Doc. 93] – FMVSS 208 regulates airbags but the testing and compliance for FMVSS does not focus on height and weight alone. Seating position is also crucial to testing and compliance. K.F. was out of position at the time of the crash. *See* General Motors Response to Plaintiffs' Motion for Partial Summary Judgment, Response to Plaintiffs' Statement of Facts, No. 1 and Cited Evidence [Doc. 92], which is incorporated herein.

14.     Disputed with regard to the characterization that K.F. fell "decidedly" within the FMVSS 208 definition of a 5th percentile female; height and weight alone are not the focus under FMVSS 208. *See* Response to Plaintiffs' Statement of Additional Undisputed Material Facts, No. 13, *supra*.

15.     Disputed. This fact relates to the airbag and the SDM and GM's internal requirements. As GM noted in its response to this fact in Plaintiffs' motion for partial summary judgment, which Autoliv adopted – *see* Autoliv's Response to Plaintiffs' Motion for Partial Summary Judgment, p.1 [Doc. 93], the cited testimony does not support the proposition. *See* General Motors Response to Plaintiffs' Motion for Partial Summary

4

Judgment, Response to Plaintiffs' Statement of Facts, No. 1 and Cited Evidence [Doc. 92], which is incorporated herein.

16. Undisputed that Mr. Sadrnia testified he does not read the owners' manuals in vehicles he does not own, but irrelevant.

17. Undisputed.

18. Disputed. Autoliv's seat belt expert intends to opine that, based on physical evidence on the seat belt worn by K.F. at the time of the crash, K.F.'s injuries, and Autoliv's biomechanics expert's surrogate work, K.F.'s seat belt had moved off her shoulder and onto her upper arm at the time of the crash. As a result, K.F. had approximately 5 inches more webbing in the seat belt system than a properly seated occupant would have. Redacted Expert Report of William V. Van Arsdell, Ph.D., P.E., pp.9-13 [Doc. 93-2]. K.F.'s injuries were caused by her likely being out of position at the time of impact. Redacted Expert Report of Elizabeth H. Raphael, M.D., F.A.C.E.P., p.17, ¶¶ 2-3 [Doc. 93-3].

19. Disputed. Autoliv does not design vehicles and does not manage the restraint system or restraint system philosophy. Deposition of David Prentkowski, 86/18-87/16 [Ex. 1]. Autoliv does not provide "restraint systems" to General Motors. Autoliv develops components capable of being assembled into a seat belt assembly, but the customer designs the functionality of what the seat belt system is being asked to do in the vehicle in conjunction with everything else that makes up the vehicle's restraint system. The customer, in this case General Motors, sets the functional expectation of the seat belt based on its own analysis. *Id.* at 17/16-18/21. Plaintiffs' characterization of Prentkowski's cited

testimony regarding testing is not accurate. Prentkowski testified Autoliv does not perform any testing of the seat belt assembly with the air bag or the rest of the restraint system; all vehicle system-level testing and overall restraint system-level testing is done by General Motors. Autoliv is not present at General Motors' vehicle and system-level testing of the integrated restraint system. *Id.* at 35/22-37/1.

20. Undisputed.

21. Disputed in part but irrelevant. Prentkowski testified that he had never seen the subject vehicle tested without an airbag and he was not sure what Autoliv was aware of with regard to the NCAP test being discussed at his deposition. Prentkowski Deposition, 128/5-128/11 [Doc. 94-5].

22. Disputed. The cited testimony does not support the statement that it is a "scientific and statistical inevitability" that a retractor with a load limiter of 2kN would cause injury to a passenger, and Hannemann's opinion that Autoliv had "an ethical duty" to warn General Motors of that is inappropriate and irrelevant. Autoliv provides products that meet its customer's specifications and requirements. The customer is responsible for the vehicle and the rest of the components that make up the restraint system. The customer specifies what the seat belt should look like and what components and features it should include. Deposition of David Prentkowski, 31/11-31/21 [Ex. 1]. With regard to the load limiter in the pretensioner, Autoliv offers many options and General Motors decides which one it wants and needs for its particular application. *Id.* at 38/10-39/5. Autoliv has never explained to a customer like General Motors the relationship between the airbag and the

6

seat belt in providing optimum restraint. That is something General Motors knows. *Id.* at 84/8-85/13. General Motors, as the designer of the restraint systems in its vehicles, knows how load limiters in retractors work and how they function. *Id.* at 172/1-172/17.

### III. ARGUMENT AND AUTHORITY

#### A. Plaintiffs Concede They Have No Defect Claim Related to the Right Front Passenger Airbag Module Manufactured by Autoliv

Plaintiffs do not address, and have thus conceded, that they have no claim against Autoliv based on any alleged defect in the right front airbag module manufactured by Autoliv and integrated by General Motors into the restraint system of the 2012 Malibu. Consequently, Autoliv is entitled to summary judgment on that claim.

#### B. Plaintiffs Have No Evidence to Support a Reasonable Inference That the Right Front Seat Belt Assembly Component Was Defective Itself or That a Defect in the Right Front Seat Belt Assembly Itself Caused K.F.'s Injuries

Plaintiffs contend that even if this Court grants Autoliv's motion to exclude the testimony of their liability expert, Neil Hannemann, the jury could nonetheless find the seat belt assembly was defective based on "circumstantial evidence" and this "simple set of facts" – K.F.'s airbag did not deploy, K.F. was properly belted, and she struck the interior of the vehicle and sustained fatal injuries. Plaintiffs' Response, p.8. Plaintiffs are wrong. The facts of the subject crash – which was more severe than 99.9% of all frontal collisions and during which K.F. was out of position in her seat and seatbelt – are not simple, and the defect claims asserted by Plaintiffs are beyond a jury's ordinary knowledge and common experience. And the facts asserted by Plaintiffs simply do not support a reasonable

7

inference that the load limiter in the retractor of the seat belt assembly itself was defective and *that such defect* standing on its own caused K.F.'s injuries given that K.F.'s airbag did not deploy. Without expert evidence, the jury would be left to speculate whether a design defect in the load limiter of the seat belt assembly alone caused K.F.'s injuries. As the court noted in *Nash v. General Motors Corp.*, 153 P.3d 73 (Okla. Civ. App. 2007), "[s]uch speculation would be error because 'the mere possibility that a defect caused the injury is not sufficient.'" *Id.* at 75 (quoting *Dutsch v. Sea Ray Boats, Inc.*, 845 P.2d 187, 191 (Okla. 1992)).

Plaintiffs' do not respond to Autoliv's argument that, as a component part supplier, Autoliv cannot be liable for defects in the "restraint system" of the 2012 Malibu into which its component part was integrated by General Motors or for injuries caused by defects in a component part Autoliv did not manufacture. More importantly, Plaintiffs do not dispute Autoliv's undisputed facts which reflect the opinions of Plaintiffs' experts that defects in the "restraint system" of the 2012 Malibu designed by General Motors *which failed to deploy the airbag* caused K.F.'s fatal injuries, and that if the airbag had deployed K.F. likely would not have been killed. *See* Autoliv's Undisputed Facts, Nos. 7-11. Instead, Plaintiffs contend Autoliv should be liable because it manufactured the seat belt assembly according to the specifications of its customer, General Motors, and because it "neglected to warn" the automaker about alleged risks of a load limiter with a force of 2kN if the airbag failed to deploy. Plaintiffs' Response, pp.9-10. But this argument is contrary to the assertions of Plaintiffs' own expert who claims in his expert report that "[t]he risk of using

8

a load limiter with a force level lower than 6 kN was known" in the industry. Report of Hannemann, p.15, ¶ X.A.8.c. [Doc. 87-5]. It is also contrary to the law and to the facts regarding Autoliv's role as a component part manufacturer.

The law does not require the supplier of a component part to warn its purchaser, the end-product manufacturer, of dangers that could arise when the component is assembled into the end-product manufacturer's design unless the supplier suspects its purchaser is not aware of the danger. A supplier is simply not required to warn a sophisticated purchaser of dangers of which its customer is aware or should be aware. *Akin v. Ashland Chemical Co.*, 156 F.3d 1030, 1037 (10th Cir. 1998) (applying Oklahoma law). As the Tenth Circuit explained:

> We read Oklahoma case law to impose no duty to warn a purchaser as knowledgeable as the United States Air Force of the potential dangers of low-level chemical exposure. Plaintiffs rely on the argument that the Air Force did not actually know the risks involved in low-level chemical exposure. However, Oklahoma law clearly imposes a "should have known" standard as well, applicable to "knowledgeable purchasers." This is tantamount to the "sophisticated purchaser defense" exception which is based upon principles set forth in the Restatement (Second) of Torts. This exception absolves suppliers of the duty to warn purchasers who are already aware or should be aware of the potential dangers.

*Id.* at 1037 (citations and footnotes omitted). The court affirmed summary judgment for the manufacturers, finding the Air Force easily qualified as a "knowledgeable purchaser" given its extremely knowledgeable staff and level of sophistication. *Id.*

It is axiomatic that General Motors, which designed and manufactured the 2012 Malibu, qualifies as a "knowledgeable purchaser" of the component parts it specifies and


integrates into its vehicles. Consequently, Autoliv had no duty to warn General Motors of any alleged risks associated with the use of a load limiter with a force of 2kN in the seat belt assembly in the restraint system of the 2012 Malibu. Plaintiffs' attempt to hold Autoliv liable on that basis – for supplying General Motors with a component part that met General Motors' specifications, Plaintiffs' Response, p.10 – is not supported by the law or the facts.

## IV. CONCLUSION

For the reasons set forth herein and in Autoliv's motion for summary judgment [Doc. 87], Autoliv respectfully requests that is entitled to summary judgment on the claims asserted against it by Plaintiffs.

/s/ Linda G. Kaufmann
James A. Jennings, OBA #4647
J. Derrick Teague, OBA #15131
Linda G. Kaufmann, OBA #14759
Haylie D. Treas, OBA #30275
JENNINGS TEAGUE, P.C.
204 N. Robinson, Suite 1000
Oklahoma City, Oklahoma 73102
Telephone:  405-609-6000
Facsimile:   405-609-6501
jjennings@jenningsteague.com
dteague@jenningsteague.com
lkaufmann@jenningsteague.com
htreas@jenningsteague.com
**ATTORNEYS FOR DEFENDANT AUTOLIV ASP, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Richard L. Denney
rdenney@dennbarr.com
Lydia JoAnn Barrett
lbarrett@dennbarr.com
Russell T. Bowlan
rbowlan@dennbarr.com
Jason E. Robinson
jrobinson@dennbarr.com
    and
Larry Tawwater
lat@tawlaw.com
**ATTORNEYS FOR PLAINTIFFS**

Mary Quinn Cooper
maryquinn.cooper@mcafeetaft.com
Andrew L. Richardson
andrew.richardson@mcafeetaft.com
Harold Zuckerman
harold.zuckerman@mcafeetaft.com
**ATTORNEYS FOR GENERAL MOTORS LLC**

                              */s/ Linda G. Kaufmann*
                              Linda G. Kaufmann