# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

RICHARD FAUST, as the Personal )
Representative of the Estate of K.F., )
ASHLEY FAUST, individually, and )
JUSTIN FREDERICK, individually, )
)
           Plaintiffs, )
)
-vs- )   Case No. CIV-16-961-F
)
GENERAL MOTORS LLC, )
HUDIBURG BUICK-GMC, LLC, )
AUTOLIV ASP, INC., and DELPHI )
AUTOMOTIVE, LLC, )
)
           Defendants. )

## ORDER

Before the court is the Motion for Summary Judgment of Defendant Autoliv ASP, Inc., filed August 16, 2018. Doc. no. 87. Plaintiffs have responded to the motion and defendant has replied. Upon due consideration of the parties' submissions, the court makes its determination.

## I.

On the afternoon of March 17, 2014, plaintiff Ashley Faust was driving a 2012 Chevrolet Malibu, manufactured by defendant, General Motors, LLC. Ms. Faust's eleven-year old daughter, K.F., was a passenger in the front seat of the vehicle. For reasons unknown, the vehicle left the roadway and collided with a tree at a high speed. Both occupants were wearing seat belts. The front driver's side airbag deployed, but the front passenger side airbag did not. Ms. Faust sustained serious injuries and K.F. sustained fatal injuries.

Defendant, Autoliv ASP, Inc. ("Autoliv"), manufactured the vehicle's right front seat belt assembly and the right front airbag module. Plaintiffs, Richard Faust, as personal representative of the estate of K.F., Ashley Faust and Justin Frederick,[1] have sued Autoliv seeking to recover damages under a claim of strict liability. Autoliv moves for summary judgment, under Rule 56(a), Fed. R. Civ. P., arguing that plaintiffs cannot prove the elements of a strict liability claim. Specifically, Autoliv argues that plaintiffs cannot demonstrate that there were any design defects in the right front seat belt assembly or the right front airbag module or that any design defects in those components caused K.F.'s fatal injuries.

II.

Pursuant to Rule 56(a), Fed. R. Civ. P., "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Id. In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All justifiable inferences are to be drawn in the non-moving party's favor. Anderson, 477 U.S. at 255 (citing Adickes, 398 U.S. at 158-159).

---

[1] Mr. Frederick is the natural father of K.F.

III.

Initially, in its motion, Autoliv asserts that plaintiffs have no evidence to support their strict liability claim regarding the right front airbag module component. According to Autoliv, plaintiffs must present reliable expert testimony to support their strict liability claim. Autoliv points out that plaintiffs' retained expert, Neil Hannemann, had no criticisms of Autoliv's right front airbag module in his expert opinion and deposition testimony and Mr. Hannemann made no claim that the airbag module was defective or that it caused K.F.'s airbag not to deploy. Thus, Autoliv contends that it is entitled to summary judgment on plaintiffs' strict liability claim to the extent it is based upon the right front airbag module.

In response, plaintiffs admit that Mr. Hannemann had no criticisms of the right front airbag module and made no claim that it was defective or that it caused the airbag not to deploy. They do not proffer any evidence to support any claim that the airbag module was defective or that it caused K.F.'s airbag not to deploy. Further, they present no argument concerning the airbag module.

Because the record lacks any evidence to support a finding by a reasonable juror that the right front airbag module was defective and that it caused K.F.'s airbag not to deploy, the court concludes that Autoliv is entitled to summary judgment on plaintiffs' strict liability claim to the extent it is based upon the right front airbag module.

IV.

Next, Autoliv asserts that plaintiffs cannot prove their strict liability claim to the extent that it is premised upon the right front seat belt assembly. Autoliv points out that contemporaneous with its summary judgment motion, it filed a Daubert motion (doc. no. 86) seeking to exclude Mr. Hannemann's opinion that a seat belt assembly with a load limiter with a force setting of 2kN – like the seat belt assembly in the vehicle – is defective in design. Contingent on the granting of the motion,

3

Autoliv maintains that plaintiffs have no evidence of any design defect in the right front seat belt assembly component. Even if the motion is not granted, Autoliv contends that summary judgment is nonetheless appropriate. Autoliv asserts that plaintiffs do not have sufficient evidence for a reasonable juror to find that K.F.'s injuries were caused by any design defect in the right front seat belt assembly itself. According to Autoliv, plaintiffs' experts, including Mr. Hannemann, contend that defects in the "restraint system" caused K.F.'s injuries. However, as manufacturer of the right front seat belt assembly, Autoliv argues that it cannot be liable for defects in the "restraint system" or for the failure of any component in the "restraint system" which it did not manufacture. Because plaintiffs cannot prove the seat belt assembly itself was defective or that, on its own, the seat belt assembly caused K.F.'s injuries, Autoliv posits that it is entitled to summary judgment on plaintiffs' strict liability claim.

Plaintiffs counter that in the unlikely event Mr. Hannemann's opinion is excluded, they nonetheless have sufficient circumstantial evidence to support a finding that the seat belt was defective. Plaintiffs point out that the evidence shows that the airbag did not deploy, and even though K.F. was properly belted, she struck the knee bolster and the dash area of the vehicle, resulting in her fatal injuries. According to plaintiffs, a reasonable juror may infer from the evidence that the seat belt performed in an unreasonably dangerous manner. Plaintiffs maintain that Mr. Hannemann's role as expert is only to provide a scientific explanation to translate that inference into a determination. Further, plaintiffs assert that the facts in the record indicate that a defect in the seat belt itself led to K.F.'s injury. Specifically, they argue that (a) Autoliv, at GM's request, manufactured the retractor of the seat belt assembly with a load limiting force of 2kN, despite knowing that airbag nondeployment was a demonstrated statistical certainty and that a load limiting force of 2kN would, in that event, fail to restrain an occupant falling within the 5th

4

percentile female category, such as K.F, inevitably permitting the occupant to crash into the knee bolster, glove box and instrument panel of the vehicle, and (b) Autoliv neglected to warn GM of the inevitable catastrophic results that would ensue with a load limiter force of only 2kN in the event the airbag failed to deploy. Plaintiffs also point out that when K.R.'s airbag failed to deploy, the 2kN load limiter in the retractor of her seat belt failed to restrain her, allowing her to impact the hard surfaces in front of her.  Plaintiffs contend that but for Autoliv's knowing compliance with GM's request that Autoliv manufacture the subject retractor with a load limiting force of 2KN, K.F.'s seat belt would have kept her "within the confines of her seat," *see*, doc. no. 94, and she would have survived the accident.

In reply, Autoliv contends that plaintiffs cannot rely on circumstantial evidence to prove that the seat belt assembly itself was defective and that such defect caused K.F.'s injuries.  Autoliv asserts that the design defect claim asserted by plaintiffs is beyond a jury's ordinary knowledge and common experience.  Also, Autoliv contends that plaintiffs have not disputed that their own experts' opinions reflect that defects in the "restraint system" designed by GM failed to deploy the airbag, and that if the airbag had deployed, K.F. would not have been killed.  Autoliv additionally asserts that plaintiffs' argument that Autoliv should be liable because (a) it manufactured the seat belt assembly according to specifications of GM and (b) it neglected to warn GM of the alleged risks of the load limiter with a force of 2kN, is contrary to the assertion of Mr. Hannemann that "'[t]he risk of using a load limiter with a force level lower than 6kN was known' in the industry."  Doc. no. 98, pp. 8-9 (quoting Report of Hannemann, p. 15, ¶ X.A.8.c).  Autoliv further argues that it had no duty to warn a sophisticated purchaser such as GM of the alleged risks associated with the use of a load limiter with a force of 2kN of which it was or should have been aware.  Autoliv maintains that plaintiffs' attempt to hold it liable on that

5

basis – for supplying GM with a component part that met its specifications – is not supported by the law or the facts.

V.

Upon review, the court finds that Autoliv is not entitled to summary judgment. The court recently held a hearing on Autoliv's Daubert motion seeking to exclude the opinion and testimony of Mr. Hannemann and denied it.  *See*, doc. no. 101. Viewing the record, with all justifiable inferences therefrom, in favor of plaintiffs, the court concludes that genuine issues of material fact exist as to whether the seat belt assembly was defective and whether the defective seat belt assembly caused K.F.'s injuries.  As to the failure to warn a sophisticated purchaser argument, the court declines to decide as a matter of law whether Autoliv had a duty to warn GM. The court notes that plaintiffs' operative complaint does not allege a failure to warn claim against Autoliv or GM.  Moreover, the record is not sufficient to permit an adjudication as to whether GM is a sophisticated purchaser.  This issue may be raised again at the Rule 50 stage of trial, if appropriate.

VI.

Based upon the foregoing, the Motion for Summary Judgment of Defendant, Autoliv ASP, Inc. (doc. no. 87) is **GRANTED in part** and **DENIED in part**.

IT IS SO ORDERED this 15th day of October, 2018.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

16-0961p017 rev.docx